## COOKE & CO. v. PEARCE.

1. A corporation organized in January, 1882, under the act of 1874, providing for the granting of certain charters (15 *Stat.*, 557), was subject to the requirements of chap. LXIII. of the General Statutes of 1872, which made the directors personally responsible for the debts of the company, if they failed to submit to the stockholders a statement of the capital stock paid in and of the assets of the company, or to publish such statement; and, in action by a creditor of the company against the directors individually, the Circuit Judge properly refused a non-suit, there being some evidence of such failures.

2. In action by a *bona fide* endorsee for value before due of a promissory note against the maker, its consideration cannot be inquired into; and the note in this case being, for this reason, a binding debt of the company, and the directors being personally liable under the statute and the facts of this case for the debts of the company, the note is their debt also, and they cannot, when sued thereon, question its consideration.

3. The directors were required by law to make certain annual statements to the stockholders and to publish the same, under penalty of a personal liability for the debts of the corporation.   *Held*, that the state-

ment and publication should have been made, whether the stockholders met in annual convention or not.

4. The character of a corporation should be determined by its charter, and oral testimony upon the point is inadmissible.

5. The directors were liable for the amount of the note of their company and interest thereon, but not for the amount of a judgment based upon this note previously rendered against the corporation itself, to which judgment they were not parties.

Before FRASER, J., Richland, April, 1884.

This was an action by H. D. Cooke and Lester A. Bartlett, copartners under the firm name of H. D. Cooke, Jr., & Co., against Samuel A. Pearce, W. T. C. Bates, A. P. Butler, and A. D. Goodwyn, directors of "The South Carolina Cotton Gin Improvement Company," a corporation holding the following charter:

"STATE OF SOUTH CAROLINA.

"Know all men, that in accordance with an act entitled 'An act to provide for granting of certain charters,' approved the twentieth day of February, A. D. 1874, that on the seventeenth day of January, A. D. 1882, a majority of the stockholders of the South Carolina Cotton Gin Improvement Company having by petition applied for a charter for the said South Carolina Cotton Gin Improvement Company: Therefore, know all men by these presents, that J. P. Richardson, R. M. Sims, Jno. Bratton, A. P. Butler, J. D. Neel, T. C. Brown, J. A. Sligh, S. A. Pearce, J. N. Huffman, A. D. Goodwyn, John Taylor, F. B. Orchard, citizens of the State of South Carolina, together with such other persons as now are, or may hereafter be, associated with them, and their successors, be, and they are hereby made and created, a body politic and corporate, under the name and style of the South Carolina Cotton Gin Improvement Company; and by said name they are hereby made capable in law to carry on and conduct the business of manufacturing, using, and applying, and granting the right to others to use, manufacture, and apply the Briggs' cotton gin saw cleaner and brush, patented October 28, A. D. 1879, and the various industries connected therewith, and to exercise all the powers suitable and proper for that purpose, and to hold, purchase, receive, work, sell, mortgage, lease, enjoy, and retain to them, their successors and assigns, lands, tenements, goods, and chattels, of whatsoever kind, as may be deemed by them conducive to the objects and interests of said corpora-

tion. The said corporation, by its corporate name, may sue and be sued, plead and be impleaded," &c.   *   *   *

"In witness whereof, I have hereunto set my hand and affixed the seal of the court at Columbia, this twenty-third day of February, in the year of our Lord one thousand eight hundred and eighty-two, and in the 106th year of the independence of the United States of America.

                    "E. R. ARTHUR, C. C. P. & G. S."

This charter was duly accepted by the company at a meeting of the stockholders held February 25, 1882.

At the trial, defendants moved for leave to amend their answer by inserting an allegation that on two occasions they had made an effort to obtain a stockholders' meeting, but had failed. The judge refused to allow the amendment, because he deemed such an allegation to be immaterial. Other matters are stated in the opinion.

The judge's charge to the jury was as follows:

Many allegations of the complaint are admitted by the answer. It is admitted that the note set forth in the complaint was executed by the company of which these defendants were the directors. And I charge you that possession of the note by the plaintiffs is *prima facie* evidence of ownership, and that they are the holders thereof for a valuable consideration. In an action on the note by the plaintiffs against the maker, it would be incompetent for the latter, upon the plea of original want or failure of consideration, to inquire into the consideration of the note, without some notice of failure of consideration, of which there is no evidence. Such negotiable paper implies a consideration, and between the maker and endorsee cannot be impeached. And so I charge you that, in the present action, it is equally incompetent for these defendants to inquire into the consideration of the note upon which the action is based. I have therefore excluded all evidence in reference to the consideration of the note. With that you have nothing to do.

If the defendants were directors, they had no right to resign, as stated by the witness for defendants, so as to relieve themselves of any liability. And if they resigned at any time short of the completion of the twelve months, they are liable for the

non-performance of any of the duties which the law requires of the directors during that period.

Now, the defendants are alleged to be liable upon several grounds :

1. That a portion of the capital stock of the company, greater in amount than its indebtedness to the plaintiff, was withdrawn and divided among the stockholders of the company with the consent of the defendants. Now, I do not hesitate to charge you that there is no evidence whatsoever of this allegation.

2. That before the maturity of the note, and during the administration of the defendants as directors, the debts of the company exceeded the amount of the capital stock paid in by an amount greater than the amount of its indebtedness to plaintiffs. This is altogether a question of fact, to be decided by the jury. I therefore leave it to you upon the evidence which you have heard.

3. That the defendants have failed to make the annual statement to the stockholders, and to make publication of same in the newspapers, as required by law. It is admitted that the statement and publication were not made. I am not prepared to say that the General Statutes of 1882 would not relieve the defendants from the obligation to publish the statement. You need not, therefore, consider the question of publication, and you may assume it to be unnecessary, as the case must turn on the failure of the defendants to make the annual statement to the stockholders. If the defendants were directors, they were bound to make this annual statement. This statement is a great safeguard against the mismanagement of the corporation by its directors. Whether these defendants have reasons or excuses for not making this statement cannot affect the case. The legislature has required them to make it, and attached the penalty unconditionally upon their failure so to do. I therefore charge you that if they have failed in this, they are liable, no matter what may be their excuses.

The only remaining question is, whether this company was a manufacturing corporation. This is a question of law. If the charter which has been proved is the charter under which this company organized and operated, then I charge you, as matter of law, that it was a manufacturing corporation. The only ma-

terial question for your consideration is whether the charter proved is the charter of this company.

If you shall find for the plaintiffs, you can only find the amount of the note and interest. The plaintiffs are not entitled to recover against these defendants the amount of the judgment recovered by the plaintiffs against the company.

The defendants appealed upon the following exceptions :

The defendants except to the rulings of his honor, T. B. Fraser, presiding judge, upon the following grounds :

1. Because his honor erred in ruling that the consideration of the note described in the complaint could not be inquired into, and in excluding the testimony of the witnesses, S. A. Pearce and J. P. Richardson, as to the same.

2. Because his honor erred in ruling that testimony in support of any efforts on the part of the directors to obtain a meeting of the stockholders of the "South Carolina Cotton Gin Improvement Company" for the purpose of submitting to such meeting a statement of the financial condition of said company irrelevant ; and in excluding the testimony of the witnesses, S. A. Pearce and J. P. Richardson, as to the same.

3. Because his honor erred in ruling that the nature of the business in which the "South Carolina Cotton Gin Improvement Company" was engaged could not be shown by parol, and in excluding the testimony of the witnesses, S. A. Pearce and J. P. Richardson, as to the same.

4. Because his honor erred in refusing to allow the defendants to amend their answer as requested.

5. Because his honor erred in refusing the defendants' motion for a non-suit.

The defendants further except to the charge of the presiding judge upon the following grounds :

1. Because his honor erred in charging the jury, "that in the present action it is equally incompetent for these defendants to inquire into the consideration of the note upon which the action is based."

2. Because his honor erred in excluding all evidence in reference to the consideration of the note.

3. Because his honor erred in charging the jury, "if the defendants were directors, they had no right to resign as stated by the witness for defendant, so as to relieve themselves of any liability."

4. Because his honor erred in charging the jury, "if the directors resigned at any time short of the completion of the twelve months, they are liable for the non-performance of any of the duties which the law requires of the directors during that period."

5. Because his honor erred in charging the jury, "if the defendants were directors, they were bound to make this annual statement."

6. Because his honor erred in charging the jury, "whether these defendants have reasons or excuses for not making this statement cannot affect the case. The legislature has required them to make it, and attached the penalty unconditionally upon their failure so to do. I therefore charge you that if they have failed in this, they are liable, no matter what may be their excuses."

7. Because his honor erred in charging the jury, "the only remaining question is, whether this company was a manufacturing company. This is a question of law. If the charter which has been proved is the charter under which this company organized and operated, then I charge you as matter of law that it was a manufacturing company. The only material question for your consideration is, whether the charter proved is the charter of the company."

The plaintiffs appealed upon the following assignments of error:

1. That his honor charged the jury that the plaintiffs could not recover the amount of the judgment in their favor against "The South Carolina Cotton Gin Saw Improvement Company" and interest, but were restricted to recovery at most of the amount of note on which said judgment was based and interest.

2. That his honor refused to charge that if the defendants were directors, they were bound by statute to publish as well as make the annual statement, and withdrew from the jury all consideration of the liability of the defendants consequent upon the failure to make such publication.

*Messrs. Bachman & Youmans,* for plaintiffs.

*Messrs. Clark & Muller,* for defendants.

July 16, 1885.  The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.    In January, 1882, the defendants, appellants, with others, obtained a charter from the clerk of the court for Richland County, acting under an act to provide for granting charters, approved 1874, for the incorporation of the "South Carolina Cotton Gin Improvement Company."    Of this company the defendants, with one J. N. Huffman, since deceased, were elected directors in January, 1882.    On the thirteenth of April thereafter the company made its promissory note for $750, payable to the order of J. H. Sypher, president of the "American Cotton Gin Saw Cleaning Company," on the first of November, 1882.    This note was afterwards endorsed before due to the plaintiffs, who, in July, 1883, recovered judgment thereon against said "South Carolina Cotton Gin Improvement Company" for the sum of $878.77, which judgment, and the execution thereon, remain unsatisfied.    In the latter part of February, 1883, the defendants resigned their office as directors aforesaid.

The action below was brought, alleging liability on the part of the defendants on the following grounds:    1st. That before the maturity of the note, and during the administration of the defendants as directors, the debt of the company exceeded the amount of the capital stock paid in by an amount greater than the amount of its indebtedness to the plaintiffs.    2d. That a portion of the capital stock of the company greater in amount than its indebtedness to the plaintiffs, was withdrawn and divided among the stockholders of the company, with the consent of the defendants. 3d. That the defendants, as directors, failed to make to the stockholders of said company the annual statement, setting forth the amount of capital stock paid in, and the general assets of said company, or to publish the same in the newspapers, as required by law.

The defendants relied on three defences :  1st. A denial that this company was a manufacturing company.    2d. A general

denial of allegation contained in the grounds above, 1 and 2. They admit, however, that they did not submit the statement or publish the same referred to in ground 3, but allege that before the expiration of the year after organization they resigned their office and severed their official connection with said company. 3d. They allege a total failure of consideration in the note.

At the trial, his honor, Judge Fraser, presiding, refused a motion for non-suit, and during the progress of the trial ruled that testimony as to failure of consideration was incompetent, and he excluded certain witnesses offered to that end. He also excluded testimony offered as to the inability of the defendant directors to obtain a stockholders' meeting for the purpose of making a statement of the financial condition of the company, and also parol testimony offered to show the nature of the business of the company, whether manufacturing or not, and he refused to allow the defendants to amend their answer, as requested, which refusals were excepted to, and have been made grounds of appeal. In addition, the judge charged that the consideration of the note could not be inquired into; that the directors could not, by resigning, relieve themselves of the necessity of making the annual statement referred to; that they could have no excuse for said failure; and, further, that whether the said company was a manufacturing company, was a question of law dependent on the construction of the charter—to all of which the appellants have assigned error in the appeal. The jury found verdict for the plaintiffs, but under the charge of the judge, they found for the amount of the note, and interest thereon, instead of the amount of the judgment against the company. From this portion of the charge the plaintiffs have appealed, and also from the refusal of the judge to charge that the defendants were bound to publish, as well as make, the annual statement mentioned above.

It will be seen from the foregoing statement that the appeal involves the following questions for our consideration: 1. Should a non-suit have been granted? 2. If not, was the consideration of the note subject to inquiry on the trial? 3. Could the failure of the directors to get a meeting of the stockholders be a legal excuse for not making the annual statement required? 4. Was it error on the part of the judge to exclude testimony going to

show the character of the company, to wit, whether a manufacturing company, the judge holding that that was matter of law depending upon the charter? 5. Was it error in the judge to confine the jury to the note and interest, instead of allowing the amount of the judgment obtained thereon against the company? 6. Did the judge err in withdrawing from the jury the fact of publishing the annual statement, and restricting their investigation to the fact of making, simply, said statement to the stockholders?

1. Should the non-suit have been granted? The rule upon that subject, as established in many cases, is that where there is a total failure of evidence as to the plaintiff's cause of action, or to any material portion thereof as alleged in the complaint, the defendant has the legal right to arrest further proceedings by a non-suit. *Carrier & Harris* v. *Dorrance*, 19 *S. C.*, 32. Was there such total failure here? The motion for non-suit was based upon two grounds: 1. That there is nothing in the act of the general assembly under which the company was incorporated, to wit, act of February 20, 1874 (15 *Stat.*, 557), which would make the officers of the corporation responsible for the matters alleged in the complaint; nor is there any other act applicable to said company under which they could be so held responsible—in other words, that plaintiffs had no cause of action. This objection is more in the nature of a demurrer for the want of a cause of action in the facts alleged, than a motion of non-suit for a failure of evidence, and in strict practice it should have been presented in this form. We will, however, consider it as it arises.

"The South Carolina Cotton Gin. Improvement Company," of which the defendants were directors, was chartered under the act of 1874 (15 *Stat.*, 557), which is an act entitled "an act to provide for the granting of certain charters," the authority to grant such charters being therein given to the clerk of the court of the county wherein they reside, or propose to carry on business, or hold property. It is admitted that there is no express provision in this act which makes the officers of the corporation organized under charters granted by the clerk responsible, as claimed herein.

At the time, however, that this act was passed, there were two chapters in the General Statutes of 1872, then of force, on the subject of corporations, to wit, chapter LXIII., p. 337, and chapter LXIV., p. 338. The first chapter is headed, "Of corporations organized under charters;" the second, "Of corporations organized under general statutes." These two chapters, up to the passage of the act of 1874, *supra*, embraced all the statute law of the State on the subject of corporations, all other acts on that subject having been repealed by the General Statutes of 1872, in which, as we have said, these two chapters were found.

. After the adoption of the General Statutes of 1872, corporations could be created in one of two ways: 1. By a direct act of the general assembly granting a charter; or, 2, by the provisions of chapter LXIV., above, of said General Statutes, 1872. In other words, first, by charter moulded, shaped, and granted by special act creating the corporation; or, second, by organization without charter under chapter LXIV. The distinction is seen in the heading or title of the two chapters referred to, the first being "Of corporations organized under charters," and the second, "Of corporations organized under general statutes." In support of this, it will be observed that under chapter LXIV. there is no provision for the granting of charters by any official or other party. The act provides only for articles of agreement entered into between the parties desiring to unite together.

Now, in chapter LXIII. are found the matters upon which the plaintiffs have based their cause of action. Does that chapter apply to this company? In section 3, we find the following: "That all manufacturing companies which shall be incorporated in this State shall have all the powers and privileges, and be subject to all the duties, liabilities, and other provisions contained in sections 4 to 19, inclusive, of this chapter." Among these sections is the section upon which plaintiffs' claim is founded. It is claimed by defendants, appellants, that these sections have no application to the "Cotton Gin Improving Company," and as no such grounds of responsibility on the directors appear in chapter LXIV., nor in the act of 1874, under which said company was incorporated, the plaintiffs have no cause of action thereon, the appellants contending that these sections had application only to

the companies chartered by express act of the general assembly, this position being founded on the fact that said sections appear in the chapter which is headed, "Of corporations organized under charters," and the further fact that they do not appear in the chapter headed, "Of corporations organized under general statutes."

It should be remembered that the general statutes are mostly but the consolidation of previous acts, those touching upon cognate subjects being incorporated in separate chapters, divided into sections, each act thus incorporated still retaining, however, its original force and effect unless otherwise provided. Now, the sections referred to above, incorporated in chapter LXIII., were sections of the act of 1847 (11 *Stat.*, 459), entitled "an act to define the terms upon which manufacturing companies shall hereafter be incorporated." This was a general act, and it applied in express terms ";to all manufacturing companies thereafter to be incorporated in this State." If this act, as it originally stood in the statutes, was still a separate act, could it be doubted that it would apply here? Certainly not, if this is a manufacturing company, because then it applied to all such companies. Why should its application be limited now to only such companies as are incorporated by special act of the legislature? Can the fact that the original act in its separate form has been repealed and its sections incorporated into the general statutes have the effect of thus curtailing it? We think not.

But even if we give full effect to the exact heading of chapter LXIII., and confine its application to "corporations organized under charters," still it could not be claimed that this company would be free from its operation. Because this company is organized under a charter granted by virtue of the act of 1874, and therefore, by the express terms of the heading of chapter LXIII., comes within its provisions. And here we might say, in reference to the first ground of the plaintiffs' appeal, that it being required by one of the sections above that the directors of said · company should not only make an annual statement to the stockholders, but should also publish the same, we think the Circuit Judge was in error in striking that ground from the case. True, this requirement is not found in the General Statutes of 1882, but it was the law when the debt here was contracted, and it

thereby was a part of the contract. Now, was there a total failure of evidence as to the fact whether or not a statement had been made to the stockholders, which, under the charge, becomes the main ground of fact in the case? We think there was sufficient evidence on the question to carry the case to the jury. The non-suit, therefore, was properly refused.

Was the consideration of the note a legitimate subject of inquiry? Our judgment upon this question will determine the correctness both of the rulings of the Circuit Judge during the progress of the trial as to the testimony offered by the defendants on that subject and also his charge to the jury on said subject. The note given by the company was a promissory note dated April 13, 1882, and payable at a future date. It was transferred to the plaintiffs before due. It is not necessary to cite authorities for the position that, if this action was directly upon the note by the plaintiffs and against the company, failure of consideration could not be interposed as a defence. This is familiar law. The act provides that the directors of the company, in certain contingencies (one of which is the failure to make to the stockholders an annual statement), shall be personally liable, jointly and separately, for all debts of the company then existing, &c. This act was intended to protect the creditors of the company, and wherever a creditor holds a debt against said company the act applies.

Did the plaintiffs here hold a debt against the company? They held a note which is not disputed, except these defendants allege that it was without consideration. But be that fact as it may, the company could not interpose such a defence. The note in the hands of the plaintiffs stands against the company as if founded upon the most perfect and valuable consideration. This the court is bound by law to assume and take for granted. It is certainly then a debt of the company, and being such a debt, it is also, under the act, a debt of the directors. Not by virtue of their individual contract in making the debt, when in such case the consideration might be inquired into, but because under the act they have in substance contracted to pay the debt of the company upon the happening of a certain contingency, which contin-

gency, it is alleged, has happened in this case.    We see no error in the judge's rulings or charge upon this subject.

We think the directors were bound to make the annual statement to the stockholders required by the act, whether there was an actual convention of said stockholders or not, and also that the statement should have been published as required in General Statutes of 1872, which was of force when this company was chartered.

We concur with the Circuit Judge, too, that the character of the company depended upon its charter, and was not, therefore, the subject of oral testimony.

And we think the Circuit Judge was right in restricting the verdict to the note and interest.    That was the primary evidence of the debt, and, although it has been reduced to judgment against the company, yet the defendants were not parties to that proceeding, and were not bound thereby.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.